Christopher L. Cauble, OSB No. 962374
ccauble@thecaublefirm.com
**Cauble, Selvig & Whittington, LLP**
111 SE Sixth St.
Grants Pass, OR 97526
Telephone: (541) 476-8825
Facsimile: (541) 471-1704

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## MEDFORD DIVISION

| | |
|---|---|
| **GRASCO HEMP, LLC,** an Illinois Limited Liability Company, | Case No.: |
| Plaintiff, | **COMPLAINT (Breach of Contract, Fraud)** |
| v. | |
| **DRYING SOLUTOINS, LLC,** an Oregon Limited Liability Company, **COLT HANSEN,** an individual, and **ADAM POPEJOY**, an individual, and **SHEA McINVALE**, an individual | **JURY TRIAL DEMANDED** |
| Defendants. | |

COMES NOW Plaintiff Grasco Hemp, LLC, by and through its attorney, Christopher L.

Cauble, and alleges as follows:

1.

At all times relevant, Plaintiff was an Illinois limited liability company headquartered in

Hinsdale, Illinois.

2.

At all times relevant, Plaintiff's members were residents of Illinois and Colorado.

//

Page 1 – **COMPLAINT**

3.

At all times relevant, Defendant Drying Solutions LLC (hereinafter "Defendant Drying" or "Drying") was an Oregon limited liability company and engaged in regular and sustained business throughout Oregon.

4.

At all times relevant, Defendant Colt Hansen (hereinafter "Hansen") and Defendant Adam Popejoy ("Popejoy") were members of and held themselves out to be manages of Drying.

5.

At all times relevant, Defendant Hansen was an Oregon resident, and owner and/or agent and representative of Drying.  At all times material, Hansen was also a product dealer for Sukup Manufacturing Company, Sheffield, Iowa ("Sukup") until Sukup recently.

6.

At all times material, Defendant Popejoy was a Texas resident, individual and an owner and/or agent of Drying.

7.

At all times material, Defendant McInvale was either a Texas or Oregon resident, individual, and owner and/or agent of Drying Solutions.

//

//

## JURISDICTION AND VENUE

8.

Jurisdiction is proper under 28 U.S.C. §1332 as the parties are residents of different states and the amount in controversy exceeds $75,000.00.

9.

Venue is proper in the District of Oregon, Medford Division because the Defendants reside in and a substantial part of the events or omissions giving rise to this claim occurred within this district.

## FACTS COMMON TO ALL CLAIMS

10.

Plaintiff was referred to Hansen in connection to the possible purchase of mobile trailer hemp dryers for Grasco, which was in the midst of formation.  Hansen held himself out as an experienced hemp and marijuana grower, and a dealer for Sukup, which had created a unique and patented design for a mobile hemp dryer.

11.

Hansen, as a Sukup dealer, professed to know the performance of Sukup blowers (*e.* heaters and fans) and had communicated with Sukup regarding how to best use them for the mobile dryers.  Hansen explained that he attached the blowers to the front of side of a standard

53-foot trailer contain a steel corrugated 30-inch platform inside the trailer. Hansen asserted that

he had designed and patented this unique layout.

12.

Hansen represented and warranted that the unique design and manufacture process in the

mobile dryer could dry up to 2,500 pounds of harvested "wet" hemp in less than twenty-four

hours.

13.

Hansen further represented and warranted to Plaintiff that the internet drying temperature of

the units could be maintained within 90-95 degrees Fahrenheit with good results, so as to protect

the trichromes and terpenes of the hemp. This would allow GrasCo to dry all types and

byproducts of hemp.

14.

Plaintiff and its principals visited the Drying Solutions facility in Grants Pass, Oregon where

Defendants Hansen and Popejoy demonstrated the "unique patented process" of the mobile

dryers, showing them a specimen trailer with the term "U Dry" in blue on its sides.

15.

Based on Defendants' representations, warranties, and demonstration of the mobile dryer

units offered for sale, GrasCo and Drying entered into an Agreement to purchase three fully

equipped, and road-ready mobile dryers for the total contract prince of $204,600.00. **Exhibit A.**

16.

At the time of delivery of the dryers to Plaintiff in or about early September 2019, a principal of one of GrasCo's prospective drying clients, Amota Group, was also present with Plaintiff's principal at Drying Solutions. Hansen knew the Amota principal was a friend on the GrasCo principal and was there to observe that the units could perform as Hansen had represented.

17.

Hansen repeated his representations of the design of the mobile trailers to Amota's and Grasco's principals. Hansen reiterated the Sukup blowers in the trailers would dry at least 2,500 pounds of hemp in less than twenty-four hours and would not degrade the trichomes and terpenes (which contribute to and are indicators of the overall quality) of the hemp.

18.

The trailers Drying delivered each had an identification number of 4223, 4263, and 4286, respectively (collectively "the trailers").

19.

The units frequently failed and suffered interruptions. After 16 days of use, trailers 4233 and 4263 failed completely. Twenty-eight days after delivery, the third trailer, trailer 4268 also failed completely.

/ / /

20.

GrasCo lined up three separate, viable clients to use the three drying trailers: Amota
Group, HempTown, and Kindred.  GrasCo signed these clients in part based on the amount of
hemp the units would dry in 24 hours at specific temperatures, as Drying had represented and
warranted to GrasCo.

21.

Amota had the potential of engaging GrasCo's three trailers for the entire season.
However, when GrasCo provided the Drying trailers to Amota, they consistently failed to
perform and did not deliver anything remotely close to the amount of dry hemp that Drying had
represented.

22.

As a result of the manifest failures in the operation and capacity of the trailers, GrasCo
could not retain its clients, and its clients were forced to resort to alternate means of drying their
harvested crops.

23.

The trailers suffered repeated problems including but not limited to: propane delivery
lines and clogs, which necessitated repeated service calls from propane providers to try to keep
the units operating.

/ / /

24.

GrasCo attempted various fixes in the field, *inter alia* for temperature regulation and control, output, ventilation, and propane. GrasCo employed supervisors and service technicians to help with these "fixes."

25.

During this time, GrasCo also consulted with Sukup, the manufacturer of the blowers. During its conversations regarding issues with the blowers with Sukup, GrasCo learned Hansen had never discussed his design with Sukup or asked Sukup how to best use its blowers in the trailers. Sukup's statements discredited Hansen's professed expertise in the optimum operation of the blowers and integration with Drying's proprietary system.

26.

Sukup informed Plaintiff that anyone familiar with its heaters and fans would or should know they were not designed for Drying's application and thus were incapable of drying hemp or other similar materials in the quantities and times that Hansen had represented.

27.

On information and belief, Sukup terminated its dealership relationship with Hansen due to his representation and use of the drying units.

/ / /

/ / /

28.

Despite an extended drying season of at least 75 days, GrasCo and its clients could only use the trailers for a total of 60 days.

29.

Due to its contracts with Amota, Hemptown, and Kindred, and despite GrasCo's efforts to mitigate its losses, GrasCo was forced to expend approximately $40,000.00 in labor, supervising, and service calls to try to keep the units operating at some subpar level of efficiency and productivity during the 2019 harvest season.

30.

Had the units performed substantially as represented, GrasCo would have realized approximately $750,000.00 in profit during the 2019 season after transport and propane costs.

## FIRST CLAIM FOR RELIEF

### (Breach of Express and Implied Warranty)

31.

Plaintiff re-alleges paragraphs 1-31 as if fully set forth herein.

32.

Plaintiff is a merchant as defined in ORS 72.1040(1) because it is a business that specializes in drying and providing products to dry hemp and it sells hemp.

/ / /

33.

Defendant Drying Solution is a merchant as defined in ORS 72.1040(1) because it is a
dealer of trailers and equipment needed to dry hemp.

34.

Defendant Hansen is a merchant as defined in ORS 72.1040(1) because he is a dealer of
equipment needed to dry hemp and an agent of Defendant Drying.

35.

Defendant Popejoy is a merchant as defined in ORS 72.1040(1) because he is a dealer of
equipment needed to dry hemp and an agent of Defendant Drying.

36.

Defendant McInvale is a merchant as defined in ORS 72.1040(1) because he is a dealer
of equipment needed to dry hemp and an agent of Defendant Drying.

37.

The blowers and trailers are "goods" as defined in ORS 72.1050(1) because they were
"movable at the time of identification of the contract for sale other than the money in which the
price is to be paid."

/ / /

/ / /

38.

An agreement between Plaintiff GrasCo, Drying, Hansen, Popejoy, and McInvale exists pursuant to ORS 72.1060(1) as a contract for sale of goods (blowers and trailers).  Since Hansen, Popejoy, and McInvale are acting as agents on behalf of Defendant Drying, any contractual agreements or statements bind it as the principal.

39.

Defendants made express warranties to Plaintiff by making affirmations of fact, promise, and a statement of the sellers' opinion that the delivered trailers and blowers were capable of drying at least 2,500 pounds of hemp per day.  These affirmations of fact, promise, and a statement of the sellers' opinion formed a part of the basis of the bargain and creates and express warranty that the goods shall conform to the affirmation or promises.

40.

Defendants provided Plaintiff a brief demonstration of the trailers and blowers and showed Plaintiff the design.  These demonstrations and descriptions were part of the basis of the bargain and creates an express warranty that the whole of the goods shall conform to the demonstration.

41.

Defendants breached the express warranty to GrasCo under ORS 72.3130 that the trailers and dryers would conform with the demonstration and were capable of drying at least 2,500 pounds of hemp per day.

42.

Defendants breached the implied warranty of merchantability under ORS 72.3140 by assuring Plaintiff that the blowers and trailers worked as described.

43.

Defendants breached the implied warranty of fitness under ORS 72.3150 because they knew or reasonably should have known, at the time of contracting that Plaintiff needed to purchase a trailer and blower capable of drying at least 2,500 pounds of hemp per day so that it could lease it to other companies and/or use the blowers and trailers to their benefit for the sale of hemp.  Defendants represented that the "sample" trailer shown to Plaintiff was typical of their product and that the trailers delivered were of the same or similar quality as the trailer used for the demonstration.

44.

Plaintiff incurred economic damages of approximately $40,000.00 in its attempts to mitigate its damages by hiring technicians to diagnose and correct the issues with the trailers. These issues requiring technicians include but were not limited to: temperature regulation and control, issues with propane delivery and clogs, ventilation, and output.

45.

Purusant to ORS 72.7110, GrasCo is entitled to recover the price paid for the defective goods sold by defendants.

/ / /

46.

Pursuant to ORS 72.140, GrasCo is entitled to recover damages for any nonconformity of tender the loss resulting in the ordinary course of events from defendants' breach in the amount of $97,000.00 or in an amount to be proven at trial.

47.

Pursuant to ORS 72.7150, Plaintiff is entitled to recover incidental damages and consequential damages resulting from defendants' breach in the amount of $750,000.00 or in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

48.

Plaintiff re-alleges paragraphs 1-48 as if fully set forth herein.

49.

As a result of the above, the contract which Plaintiff and Defendants had entered into was materially breached by Defendants causing damages in the amounts stated above.

## THIRD CLAIM FOR RELIEF

### (Fraud)

50.

Plaintiff re-alleges paragraphs 1-50 as if fully set forth herein.

/ / /

51.

Defendants made material representations regarding the trailers and blowers that were knowingly false and/or were made in reckless disregard of the truth.

52.

Defendants conspired to commit fraud against Plaintiff. Hansen knowingly concealed and disregarded the problems with the design and continued to represent that the design was sufficient and the blowers were capable of drying at least 2,500 pounds of hemp per day. Defendants then negotiated the sale of the trailers and blowers with Plaintiff when they knew the product would not perform as represented.

53.

Defendants knowingly sold trailers and blowers that were incapable of performing as represented.

54.

Plaintiff GrasCo relied on the representations that the trailers and blowers were capable of drying at least 2,500 pounds of hemp per day to its detriment.

55.

As a result of these misrepresentations, GrasCo has suffered the damages described above and have also suffered noneconomic damages in the amount of $500,000.00.  As a result

of the circumstances constituting fraud described herein, GrasCo seeks punitive damages against

Defendants Drying Solution, Hansen, Popejoy, and McInvale in the amount of $1,500,000.00.

## FOURTH CLAIM FOR RELIEF

### (Piercing the Corporate Veil)

56.

Plaintiff re-alleges paragraphs 1-56 as if fully set forth herein.

57.

At all times material, Defendants Hansen, Popejoy, and McInvale acted in their personal

capacities.

58.

Defendants' actions and statements were intentional and performed with the intent to

induce Plaintiff into signing the contract.  Defendants knew or should have known the

representations made to Plaintiff were false, misleading, and a misrepresentation of the products'

capacity and ability and that Plaintiff would materially rely upon said representations in signing

the contract.

59.

Pursuant to ORS 63.160, Defendants Hansen, Popejoy, and McInvale are individually

liable for the actions and statements described herein as they were not done in good faith and

involve intentional misconduct and/or a knowing violation of the law.

60.

Pursuant to ORS 63.160, Plaintiff is entitled to the damages alleged herein against the Defendants individually.

WHEREFORE, Plaintiff prays for the following relief:

1.  A judgment against Defendant Drying Solutions for $40,000.00 or in an amount to be determined at trial for damages sustained in Plaintiff's repairs;

2.  A judgment against Defendant Drying Solutions for lost profits in the amount of $750,000.00 for incidental and consequential damages;

3.  A judgment against Defendant Drying Solutions for the cost to modify the trailers to mitigate Plaintiff's damages in the amount of $57,000.00 or in an amount to be determined at trial;

4.  A judgment against Defendant Drying Solutions for non-economic damages in the amount of $500,000.00;

5.  A judgment against Defendant Drying Solutions in the amount of $1,500,000.00 in punitive damages;

6.  In the alternative, a judgment against Defendants Hansen, Popejoy, and McInvale individually for the damages alleged herein;

7.  Plaintiff's costs and attorney fees incurred herein; and

8.  For such other relief as the Court deems just and equitable.

/ / /

/ / /

/ / /

/ / /

**DATED**: this 15th day of September, 2020.


CAUBLE, SELVIG & WHITTINGTON, LLP


Christopher L. Cauble, OSB No. 962374
ccauble@thecaublefirm.com
**CAUBLE, SELVIG & WHITTINGTON, LLP**
111 SE 6th Street
Grants Pass, OR 97526
Telephone: (541) 476-8825
Facsimile: (541) 471-1704

Of Attorney for Plaintiff

## MOBILE DRYER TRAILERS PURCHASE AGREEMENT

**Date:**      May _18_, 2019

**Seller:**      DRYING SOLUTION, LLC

**Seller's Mailing Address:**

700 Merlin Road, Bldg. E
Grants Pass, OR 97526

**Purchaser:**    PETER GRASSO

**Purchaser's Mailing Address:**

7846 PRAIRIE CIR
LONE TREE, CO 80124

**Purchase Price:**

$68,200.00 per Mobile Drying Trailer
    Plus any applicable sales and use taxes

**Payment Terms:**

$20,000 per Trailer payable upon execution hereof
Balance Due upon Pick-up by Purchaser

**Equipment Purchased:**

3 Mobile Dryers installed on road worthy 52 ft. trailers
Equipped with drying floor, heaters, blowers and lighting
Not included are electric supply, propane tanks, and
    Conveyor Belt (can be purchased from Seller Separately)

**Pick-up Date:**

On or Before July 1, 2019, as advised by Seller

    For the Purchase Price payable as detailed above, Seller sells, transfers and assigns the above described Equipment to Purchaser and **SELLER WARRANTS THE EQUIPMENT TO THE EXTEND OF THE AVAILABLE MANUFACTURERS' WARRANTIES ONLY AND THIS WARRANTY IS GIVEN EXPRESSLY AND IN PLACE OF ALL OTHER EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE AND THIS WARRANTY IS THE ONLY WARRANTY MADE BY THE SELLER AND THIS EXPRESS WARRANTY EXCLUDES ALL IMPLIED WARRANTIES, AND THE SELLER IS NOT LIABLE FOR A BREACH OF WARRANTY IN AN AMOUNT EXCEEDING THE PURCHASE PRICE OF THE EQUIPMENT PURCHASED.**

**SELLER:**
DRYING SOLUTION, LLC

By: _____
    Colt J. Hansen, Manager

**PURCHASER:**
GRASCO HEMP

By: _Peter Grasso_____
    PETER GRASSO, MANAGER